IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

HERBERT SPENCER,

        Plaintiff,

v.                                                                                       1:17-cv-00792-WJ-SCY

DAVID R. JORDAN, and
THE LAW OFFICES OF DAVID R. JORDAN, P.C.,

        Defendants.

**PLAINTIFF'S UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT**

The parties have reached settlement in this lawsuit.  The proposed settlement provides substantial benefits for the putative class.  Plaintiff Herbert Spencer moves the Court to certify a settlement class, preliminarily approve the settlement agreement, and enter an order directing the issuance of notice and scheduling a fairness hearing.  The settlement agreement is attached as Exhibit 1, and the proposed notice is attached as Exhibit 2.  Defendants do not oppose this motion.  The parties agree that the proposed settlement is fair, reasonable, adequate, and worthy of preliminary approval.

**I.     Standards for Preliminary Approval of Class Action Settlements**

A district court considering a proposed class action settlement must determine whether the proposed settlement is fair, reasonable, and adequate. *In re Integra Realty Res., Inc.*, 354 F.3d 1246, 1266 (10th Cir. 2004).  The Tenth Circuit utilizes a four-factor test for assessing whether a proposed settlement is fair, reasonable, and adequate, which includes: (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist placing the ultimate outcome of the litigation in doubt; (3) whether the value of an

immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322 (10th Cir.1984).

Review and approval of a proposed class action settlement involves two stages: preliminary approval and final approval. In the preliminary approval stage, class counsel submits the proposed terms of settlement to the court, which makes a preliminary fairness evaluation. Fed. R. Civ. P. 23(e)(2); Manual for Complex Litigation, Fourth, §21.632. "At the preliminary approval stage, the Court makes a preliminary evaluation of the fairness of the proposed settlement and determines whether it has any reason to not notify class members of the proposed settlement." *Lowery v. City of Albuquerque*, No. CIV 09-0457 JB/WDS, 2012 WL 394392, at *22 (D.N.M. Jan. 24, 2012) (Browning, J.). "There is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for Court approval." H. Newberg, A. Conte, *Newberg on Class Actions* (4th ed. 2002), §11.41. The court should grant preliminary approval where the proposed settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *In re Motor Fuel Temperatures Sales Practices Litig.*, 2011 WL 4431090, at *5 (S.D.N.Y. May 19, 2009) (internal quotation marks and citation omitted).

If certification has not yet been granted at the time of settlement, the court may certify a settlement class pursuant to Fed. R. Civ. P. 23. In the context of settlement, the court "need not inquire whether the case, if tried, would present intractable management problems." Manual for Complex Litigation, Fourth, §21.132 (internal quotation marks and citation omitted).

Once the court is satisfied that the proposed settlement meets the basic standards of fairness, reasonableness and adequacy of the proposed relief, and determines that the proposed notice to the class is adequate, the court authorizes notice of the settlement to the class members and schedules a fairness hearing. Fed. R. Civ. P. 23(e)(1); Manual for Complex Litigation, Fourth, §21.633. The fairness hearing determines whether final approval of the proposed settlement agreement will be granted, and considers any objections raised by class members. Fed. R. Civ. P. 23(e)(1); Manual for Complex Litigation, Fourth, §21.634. At the fairness hearing, the court also determines the amount of the attorney's fee and cost awards and the class representative service awards. Manual for Complex Litigation, Fourth, §21.726.

## II.     Factual and Procedural Background

This action was filed on August 3, 2017 [Doc. 1], asserting causes of actions for Defendants' alleged violations of the federal Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq*. ("FDCPA") and the New Mexico Unfair Practices Act, NMSA §57-12-1 *et seq*. ("UPA"). In the complaint, Plaintiff stated that he planned to seek certification to proceed as a class action.

Plaintiff alleged that Defendants are an attorney and his law firm who sent thousands of debt collection letters on behalf of a Gallup lender. Plaintiff alleges that in the letters, Defendants falsely stated that they were "preparing to initiate [a] lawsuit" against each recipient. Plaintiff alleged that Defendants had no meaningful involvement in sending the letters and had made no preparation to bring suit against the recipients. Plaintiff and the putative class members were each subject to these allegedly unlawful practices.

Plaintiff sought certification of a class, defined in the Complaint [Doc. 1] to include all persons who, starting one year prior to the filing of this action, were sent form debt collection

letters by Defendants that were identical to the Letter to Mr. Spencer, and who, as of the filing of this action, have not been sued by Defendants. A class has not yet been certified under Fed. R. Civ. P. 23.

Defendants denied that they violated the law, disputed Plaintiff's allegations, and raised legal and factual defenses to Plaintiff's claims. At the time of settlement, the parties were in discovery, with Defendants having responded to requests for admission, interrogatories, and requests for production.

### III.     Background of the Parties' Settlement

After formal and informal exchanges of information, the parties began negotiating settlement in August of 2018. After months of arms-length negotiations, the parties reached agreement on January 17, 2019. The parties then negotiated the terms of the written settlement agreement.

Prior to resolving his claims, Plaintiff conducted a thorough investigation. This investigation included pre-litigation research into the collection practices of Defendants; review of deposition testimony from a previous case; extensive informal discussions with Defendants' counsel after the filing of this case; review of Defendants' Answers; review of Defendants' initial disclosures; review of Defendants' written discovery responses; and review of additional documents provided by Defendants. Among other things, through their investigation, Plaintiff: (1) determined that there were 3,925 putative class members who received letters identical to the letter sent to Mr. Spencer; and (2) reviewed financial information about Defendants as relevant to their ability to pay any judgment and to the calculation of statutory damages.

In reaching settlement, Plaintiff weighed the risks and benefits of continued litigation, including the inherent uncertainty of proceeding, defenses presented by Defendants, the

likelihood of substantial expense and delay if settlement could not be reached, and the financial limitations on Defendants' ability to pay damages. Regardless of Plaintiff's confidence in his claims, litigation is not certain, and Defendants stated a number of factual and legal defenses. These defenses included allegations that Defendants were not "debt collectors" within the meaning of the FDCPA; that Defendants' conduct did not constitute a violation of the FDCPA; that Defendants' net worth would preclude a substantial award under the FDCPA; and that differing circumstances could pose a challenge for class certification. Given the nature of the case, it likely would have required depositions and ongoing written discovery throughout the class certification and merits stages, up through trial of the matter. Counsel may have been required to retain consultants and expert witnesses to offer opinions regarding liability and damages, or to rebut the opinions of Defendants' experts. The costs of litigation would have been considerable relative to likely recovery. Even in the event of success, costly and time-consuming appeals were possible. Defendants' financial records demonstrated that payment was doubtful in the event of a large judgment following years of litigation.

In light of these considerations, and particularly because the parties were able to reach a settlement agreement that was favorable to class members, Plaintiff believes that the proposed settlement agreement is in the best interests of the class.

### IV.     Summary of the Settlement Terms and Proposed Distribution

The proposed settlement agreement and plan of distribution provides substantial benefits to class members, and is worthy of preliminary approval.

#### A.     Cash Payments to Class Members

The settlement agreement calls for the payment of $85,000 by Defendants. After payment of attorney's fees, tax, costs, costs of administration, and a service award for the

named Plaintiff, discussed below, Plaintiff estimates that $57,099, or just over two thirds (67%) of the total settlement fund, will be available for distribution to class members. Based on information provided about Defendants' net worth, which is the basis of statutory damages in an FDCPA class action, 15 U.S.C. §1692k(a)(1)(B), this represents an approximately complete recovery of potential damages for class members.

Plaintiff proposes a straightforward plan of allocation of the settlement fund. Each class member will receive an equal share of the $58,875, estimated as approximately $15 per person.

### B. No Action Required By Class Members to Participate in Settlement

The settlement agreement does not require class members to submit claim forms or to take any affirmative steps to receive the benefits of the settlement. This process ensures maximum benefits to the class members.

### C. Right to Opt Out or Object

Plaintiff's proposed notice explains class members' right to opt out of this case entirely, or in the alternative to object to the proposed settlement agreement. *See* Exhibit 2. Plaintiff requests that class members who wish to opt out or object be ordered to do so in writing, postmarked no later than 60 days after the mailing deadline for the notice.

### D. Award of Attorney's Fees and Costs

Plaintiff requests that the Court grant preliminary approval to an award of attorney's fees and costs (other than costs of administration) from the common fund in the amount of $12,750, or 15% of the common fund. This amount is inclusive of gross receipts tax.

"When there is a common fund created by a settlement, courts have applied one of two methods of determining reasonable attorney's fee awards: by a percentage of the fund, or by the

lodestar method developed in the statutory fee shifting cases." *Rosenbaum v. MacAllister*, 64 F.3d 1439, 1445 (10th Cir. 1995). The Tenth Circuit has stated a "preference for the percentage of the fund method." *Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994). This method involves "a sharing of the fees among those benefitted by the litigation," and "aligns the interests of class counsel with the interests of the class." *Ramah Navajo Chapter v. Jewell*, No. 90 CV 957 JAP/KBM, 2016 WL 825710, at *18-19 (D.N.M. Mar. 2, 2016) (internal quotation marks and citation omitted). To determine the reasonableness of a percentage of the fund request, "federal courts have relied heavily on the factors articulated by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974)." *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988). The *Johnson* factors are:

> (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) any prearranged fee—this is helpful but not determinative; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Jewell*, 2016 WL 825710, at *18 (quoting *Johnson*, 488 F.2d at 717-19). Here, the *Johnson* factors weigh strongly in favor of the requested award.

### (1) The Time and Labor Involved and (11) the Nature and Length of the Professional Relationship

This case was filed more than a year ago. Since its inception, the case has involved considerable labor, starting with pre-filing investigation, through active litigation, and most recently in a long settlement process. *See* Exhibit 3 (Declaration of Nicholas Mattison). Class counsel was involved with this case since its inception, and demonstrated "devotion to the best interest of class members during the span of [this] professional relationship[]." *Millsap v.*

7

*McDonnell Douglas Corp.*, No. 94-CV-633-H(M), 2003 WL 21277124, at *11 (N.D. Okla. May 28, 2003).  Substantial work remains to be done in shepherding this case through the settlement process.  The complete resolution of this contested class action in little more than a year represents expeditious and diligent work on the part of class counsel.

### (2) The Novelty and Difficulty of the Questions

This case involved technical application of the FDCPA and the UPA.  The application of these laws to thousands of class members rendered the case all the more difficult.

### (3) The Skill Required and (9) the Experience, Reputation, and Ability of the Attorneys

Because this case presented novel and difficult questions, it required a high degree of skill to litigate.  Plaintiff was represented by New Mexico's preeminent consumer law firm.  Feferman, Warren & Mattison has practiced exclusively in consumer law in New Mexico for more than twenty years.  *See* Exhibit 3 (Declaration of Nicholas Mattison).  Several years ago, the firm was appointed class counsel in another consumer class action, *Chester v. Tancorde Finance, Inc.*, 1:14-CV-92 JAP/KK (Doc. 33, January 12, 2015), in which the District of New Mexico stated "Mr. Feferman has been a mainstay in successful consumer class actions in this District, and the Court is confident he will adequately represent the class and vigorously prosecute this case to its conclusion."  Even more recently, approving a class action settlement agreement, the Court opined that "Mr. Feferman and Mr. Mattison are highly capable practitioners of consumer law in New Mexico."  *Tullie v. T&R Market, Inc*., 1:14-CV-670 KBM/GJF (Doc. 147, August 30, 2016).  State courts agree, with New Mexico's Eleventh Judicial District observing earlier this year that "Class Counsel Nicholas Mattison demonstrated his experience and ability in successfully litigating this class action to an exceptional resolution for the

class.  Mr. Mattison has a reputation as a skilled practitioner of consumer law." *Peina v. Carma Enterprises, Inc.*, No. D-1113-CV-2014-00158 (March 1, 2018).

Plaintiff's counsel demonstrated a high degree of skill in preparing, litigating, and very favorably settling this case.

### (5) The Customary Fee and (12) Awards in Similar Cases

Some Courts in the Tenth Circuit have indicated that there is a "25% benchmark" for percentage of the fund attorney's fee awards, with adjustments to be made based on the *Johnson* factors.  *Ramah Navajo Chapter v. Norton*, 250 F. Supp. 2d 1303, 1316 (D.N.M. 2002).  However, this "benchmark" is not universally cited, and awards above 25% are quite common. "[F]ees in the range of 30–40% of any amount recovered are common in complex and other cases taken on a contingent fee basis."  *Lane v. Page*, 862 F. Supp. 2d 1182, 1256 (D.N.M. 2012) (Browning, J.); *see also*, *Chieftain Royalty Co. v. SM Energy Co.*, No. CIV-11-177-D, 2015 WL 9451069, at *4 (W.D. Okla. Dec. 23, 2015) ("fees in the range of one-third of the common fund are frequently awarded in class action cases as fair and reasonable."); *Anderson v. Merit Energy Co.*, No. CIV. 07-CV-00916 LTB/BNB, 2009 WL 3378526, at *3 (D. Colo. Oct. 20, 2009) ("The customary fee to class counsel in a common fund settlement is approximately one-third of the economic benefit bestowed on the class.").

Plaintiff's attorney's fee request is modest under the standards established in the Tenth Circuit.  As noted above, the requested award of $12,750 for attorney's fees represents 15% of the total settlement fund.  This percentage is well within the normal range in the Tenth Circuit. Plaintiff estimates that this amount will be the approximate amount of his counsel's lodestar, including costs other than costs of administration, by the time the case is complete.  *See* Exhibit 3 (Declaration of Nicholas Mattison).

### (6) Any Prearranged Fee and (4) The Preclusion of Other Employment

Class counsel undertook this action on a contingency basis. *See* Exhibit 3 (Declaration of Nicholas Mattison). Class counsel would receive no compensation for their work if they did not prevail in this action. "Given the risk of non-recovery, this factor weighs heavily in favor of the requested fee." *Vaszlavik v. Storage Corp.*, No. 95-B-2525, 2000 WL 1268824, at *4 (D. Colo. Mar. 9, 2000). "Such a large investment of money and time places incredible burdens upon law practices and should be appropriately considered." *Lane,* 862 F. Supp. 2d at 1256 (D.N.M. 2012) (internal quotation marks, citation, brackets, and ellipsis omitted); *see also, Been v. O.K. Indus., Inc.,* No. CIV–02–285 RAW, 2011 WL 4478766, at *9 (E.D.Okla. Aug. 16, 2011) ("Courts agree that a larger fee is appropriate in contingent matters where payment depends on the attorney's success.").

In addition to taking the risk of non-payment, Plaintiff's counsel were precluded from engaging in other work during the time dedicated to this case. This type of action "necessarily require[s] a great deal of work, and a concomitant inability to take on other cases." *Lucas v. Kmart Corp.*, No. CIV.A. 99-01923, 2006 WL 2729260, at *6 (D. Colo. July 27, 2006).

### (10) The Undesirability of the Case

This case was difficult and risky. No law firm other than Class Counsel showed any willingness to undertake this litigation. *See* Exhibit 3 (Declaration of Nicholas Mattison). *Cf. Lane,* 862 F. Supp. 2d at 1258 (D.N.M. 2012) ("at the class certification stage, no other class member or law firm sought to represent the class."). No class member other than Mr. Spencer was willing make the considerable investment of time and resources to represent the class. "Attorneys must have incentive to take undesirable cases in order to assure access to the courts

for all people; awarding fees based on a reasonable percentage of the recovered fund provides such an incentive." *Millsap,* 2003 WL 21277124, at *12.

### (8) The Amount Involved and Results Obtained

The settlement agreement involves the creation of a settlement fund that will give class members a complete recovery on the class claims in this matter. Class counsel respectfully submit that they have achieved an outstanding result for class members.

### E. Award of Costs of Administration

In addition to attorney's fees and costs as set forth above, Plaintiff also requests that the Court award costs of administration in the amount of $13,151 from the common fund. *See* Exhibit 4 (class administration estimate). Taxable costs as are awarded to a prevailing party in any litigation pursuant to Fed. R. Civ. P. 54(d)(1) and 28 U.S.C. § 1920.[1] In addition, as authorized by the fee-shifting statutes applicable here, 15 U.S.C. § 1692k(a)(3) and NMSA § 57-12-10(C), costs may be recovered such as a client would ordinarily be billed and that are not part of counsel's overhead. *See, e.g.*, *Payton v. New Century Mortgage Corp.*, 2004 WL 524693 (N.D. Ill. Mar. 11, 2004); *Daenzer v. Wayland Ford Inc.*, 2003 WL 22414966 (W.D. Mich. Sept. 25, 2003).

### F. Service Award to Mr. Spencer

---

[1] 28 U.S.C. § 1920 provides that "A judge or clerk of any court of the United States may tax as costs the following:
(1) Fees of the clerk and marshal;
(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title;
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title."

Plaintiff request that the Court grant preliminary approval to a service award of $2,000 for the named Plaintiff, Herbert Spencer.  "[C]ourts regularly give incentive awards to compensate named plaintiffs for the work they performed—their time and effort invested in the case." *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 861 F.3d 1182, 1195 (10th Cir. 2017).  "The practice of granting incentive awards to Class Representatives is common and widespread in class litigation." *Ponca Tribe of Indians of Oklahoma v. Cont'l Carbon Co.*, No. 05-445 (C), 2009 WL 2836508, at *2 (W.D. Okla. July 30, 2009) (approving awards ranging from $1,000 to $15,000 for class representatives).  "[I]ncentive awards are an efficient and productive way to encourage members of a class to become class representatives, and to reward the efforts they make on behalf of the class." *Shaw v. Interthinx, Inc.*, No. 13-CV-01229-REB-NYW, 2015 WL 1867861, at *8 (D. Colo. Apr. 22, 2015) (internal quotation marks and citation omitted) (awarding $10,000 to each of five named plaintiffs); *see also*, *Jones v. I.Q. Data Int'l, Inc.*, No. 1:14-CV-00130-PJK, 2015 WL 5704016, at *2 (D.N.M. Sept. 23, 2015) (approving an incentive award of $20,000 out of a $1,000,000 settlement fund).

Here, no other person indicated any willingness or interest in serving as class representative.  *See* Exhibit 3 (Declaration of Nicholas H. Mattison).  Without Mr. Spencer's efforts, there would be recovery whatsoever for the class.  Mr. Spencer served as exemplary class representative, regularly checking in with his attorney on case strategy, litigation, and settlement decisions.  *Id*.  With no assurance of any compensation whatsoever for his efforts, Mr. Spencer persevered through hardship to pursue the interests of the class.  *Id*.  Living on the Navajo Nation, being of advanced age and taking care of a severely ill wife, serving in this role was not easy for Mr. Spencer.  *Id.*  Mr. Spencer met with counsel in person, and conferred on the phone more than 15 times.  *Id*.  Mr. Spencer reviewed pleadings and other documents in detail.  *Id.*  Mr.

Spencer's labors have produced a substantial settlement that would have been impossible without him. A service award of $2,000 is reasonable to compensate Mr. Spencer for his contributions to this case.

### G. *Cy Pres* Award

Plaintiff proposes to distribute any portions of the settlement fund that cannot be practicably and economically distributed to class members to the following *cy pres* recipient: Equal DNA-People's Legal Services. "The cy pres doctrine allows a court to distribute unclaimed or non-distributable portions of a class action settlement fund to the 'next best' class of beneficiaries." *Tennille v. W. Union Co.*, 809 F.3d 555, 560 n.2 (10th Cir. 2015) (internal quotation marks and citation omitted). Plaintiff will attempt to redistribute any unclaimed funds to class members prior to making the *cy pres* donation, including through multiple rounds of check distributions, if necessary. DNA-People's Legal Services, is a 501(c)(3) nonprofit organization that provides free legal services to people living in poverty in the Four Corners area.

## V. Preliminary Approval of the Settlement Agreement Is Appropriate

### A. The Settlement Agreement is Fair, Reasonable, and Adequate

For all of the reasons set forth herein, the proposed settlement agreement is fair, reasonable, and adequate, and is worthy of notice to the class. The agreement provides substantial benefits to class members. It was the product of serious, informed, non-collusive negotiations. The agreement has no obvious deficiencies. It does not improperly grant preferential treatment to class representatives or segments of the class. Plaintiff believes that given the risks and uncertainties of litigation, the probability of extensive delays through appeal in achieving final resolution through litigation, the defenses which the Defendants have asserted in this case, and the uncertainty of collecting any judgment from Defendants, this settlement is

fair, and adequate, and is in the best interest of the Class. Because the settlement agreement falls within the range of possible approval, it should be submitted to class members for approval.

### B. Certification Is Appropriate

The parties agree that certification of a settlement class is appropriate, to be defined as: All persons who, starting one year prior to the filing of this action, were sent form debt collection letters by Defendants that were identical to the Letter to Mr. Spencer attached as Exhibit 1 to the Complaint [Doc. 1], and who, as of the filing of this action, have not been sued by Defendants.

Plaintiff meets the requirements of Fed. R. Civ. P. 23(a). The class is sufficiently numerous pursuant to Fed. R. Civ. P. 23(a)(1), with 3,925 class members. *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001) (holding that 40 class members will normally satisfy the requirement of numerosity). The class meets the requirement of commonality pursuant to Fed. R. Civ. P. 23(a)(2), since all claims involve common questions concerning Defendants' identical form collection letters, each having the capacity to "generate common *answers* apt to drive the resolution of the litigation." *In re Urethane Antitrust Litigation,* 768 F.3d 147, 157-58 5 (10th Cir. 2014) (citing *Walmart Stores, Inc. v. Dukes,* 564 U.S. 338 (2011)). Mr. Spencer's claims satisfy the requirement of typicality pursuant to Fed. R. Civ. P. 23(a)(3), since he was subject to all of Defendants' allegedly unlawful practices, and since he seeks precisely the same remedies as all class members. *Penn v. San Juan Hospital,* 528 F.2d 1181, 1189 (10th Cir. 1975) ("Typicality exists even when there may be varying fact situations among individual members of the class and this is all right so long as the claims of the plaintiffs and the other class members are based on the same legal or remedial theory."). Mr. Spencer is an adequate class representative as required Fed. R. Civ. P. 23(a)(3) because pursuant to that Rule, "(1) the class representative must not have interests antagonistic to those of the class, and (2) the attorney

representing the class must be qualified, experienced, and generally able to conduct the proposed litigation." *Lopez v. City of Santa Fe*, 206 F.R.D. 285, 289-290 (D.N.M. 2002). Mr. Spencer, and his attorneys, satisfy this standard.

Plaintiff also meets the requirements of Fed. R. Civ. P. 23(b)(3). First, in this case, the common questions do "predominate over individual questions." *Aguirre v. Bustos*, 89 F.R.D 645, 649 (D.N.M. 1981). Here, there are no individual questions presented, since Plaintiff's claims are based on Defendants' standard forms and uniform practices. Second, the class mechanism is a "superior method for resolving [the] controversy." *Aguirre*, 89 F.R.D at 649. Rule 23(b)(3) lists factors "pertinent" to the finding that a class action is superior to other available methods for the fair and efficient adjudication of the controversy, which include:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;
>
> (D) the difficulties likely to be encountered in the management of the class action.

Here, the amounts of the claims are relatively small. It is unlikely that the class members have any interest in individually controlling the prosecution of the action; no other individual actions have been filed. It would be very desirable to concentrate the litigation in this forum. Moreover, most class members would likely not even know their rights had been violated and would not be able to afford to retain competent counsel to pursue their rights, in the absence of a class action.

### C. The Proposed Notice Should Be Approved

Under Fed. R. Civ. P. 23(c)(2) and (e), class members are entitled to notice of certification and of any proposed settlement, and an opportunity to opt out or object before it is

finally approved by the Court.  The notice proposed by Plaintiff is clear and straightforward, providing class members with enough information to evaluate whether to opt out of this case or to object to the settlement, as well as directions on how to seek further information.  *See* Exhibit 2.

Plaintiff plans to use an experienced administrator, American Legal Claims Services, to manage the notice.  Notice will be sent by first class mail to addresses checked through the National Change of Address ("NCOA") database.  The notice will be mailed to the last known/updated address of all class members by first class mail and marked "address correction requested."  Any notices returned with a forwarding address will be promptly re-mailed to the forwarding address.  Notices returned without a forwarding address will be subject to more sophisticated "skip tracing" to locate the class member.  If the Court grants final approval to the settlement, the administrator will also mail checks to eligible class members using these procedures.

## VI. Conclusion and Relief Requested

Plaintiff respectfully request that the Court certify a settlement class, preliminarily approve the settlement agreement, and enter an order directing the issuance of notice and scheduling a fairness hearing.


Respectfully submitted,

*/s/Nicholas Mattison*
Nicholas Mattison
Feferman, Warren & Mattison, Attorneys for Plaintiff
300 Central Ave., SW, Suite 2000 West
Albuquerque, NM 87102
(505) 243-7773
(505) 243-6663 (fax)

16

Approved:

*Approved via email*
RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.
Seth L. Sparks
P.O. Box 1888
Albuquerque, New Mexico 87103
Telephone: (505) 765-5900
*Attorneys for Defendants*
ssparks@rodey.com

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing pleading electronically through the Court's CM/ECF File System, which caused all parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

*/s/ Nicholas Mattison*