IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

HERBERT SPENCER,

               Plaintiff,

                                          1:17-cv-00792-WJ-SCY

v.

DAVID R. JORDAN, and
THE LAW OFFICES OF DAVID R. JORDAN, P.C.,

               Defendants.

**PLAINTIFF'S UNOPPOSED MOTION
FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT**

Plaintiff Herbert Spencer, through counsel, moves the Court to grant final approval to the proposed settlement agreement in this class action lawsuit. The proposed settlement is fair, reasonable, adequate, and worthy of final approval. Having been provided with notice, no class member has objected to the proposed settlement. Defendants do not oppose this motion.

**I.     Standards for Final Approval of Class Action Settlements**

Pursuant to Fed. R. Civ. P. 23(e)(2), a Court may approve a class action settlement only upon a finding that it is "fair, reasonable, and adequate," considering the following factors:

    (A) the class representatives and class counsel have adequately represented the class;
    (B) the proposal was negotiated at arm's length;
    (C) the relief provided for the class is adequate, taking into account:
        (i) the costs, risks, and delay of trial and appeal;
        (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
        (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
        (iv) any agreement required to be identified under Rule 23(e)(3); and
    (D) the proposal treats class members equitably relative to each other.

The Court is required to hold a hearing – colloquially known as the "fairness hearing" – before it makes such a determination. *Id*. The fairness hearing determines whether final

1

approval of the proposed settlement agreement will be granted, and considers any objections raised by class members. *Id.*; Manual for Complex Litigation, Fourth, §21.634. At the fairness hearing, the court also determines the amount of the attorney's fee and cost awards and the class representative service awards. Manual for Complex Litigation, Fourth, §21.726.

## II.    Factual and Procedural Background

This action was filed on August 3, 2017 [Doc. 1], asserting causes of actions for Defendants' alleged violations of the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. ("FDCPA") and the New Mexico Unfair Practices Act, NMSA §57-12-1 *et seq*. ("UPA"). In the complaint, Plaintiff stated that he planned to seek certification to proceed as a class action.

Plaintiff alleged that Defendants are an attorney and his law firm who sent thousands of debt collection letters on behalf of a Gallup lender. Plaintiff alleges that in the letters, Defendants falsely stated that they were "preparing to initiate [a] lawsuit" against each recipient. Plaintiff alleged that Defendants had no meaningful involvement in sending the letters and had made no preparation to bring suit against the recipients. Plaintiff and the putative class members were each subject to these allegedly unlawful practices.

Plaintiff sought certification of a class, defined in the Complaint [Doc. 1] to include all persons who, starting one year prior to the filing of this action, were sent form debt collection letters by Defendants that were identical to the Letter to Mr. Spencer, and who, as of the filing of this action, have not been sued by Defendants.

Defendants denied that they violated the law, disputed Plaintiff's allegations, and raised legal and factual defenses to Plaintiff's claims. At the time of settlement, the parties were in

discovery, with Defendants having responded to requests for admission, interrogatories, and requests for production.

## III.    Background of the Parties' Settlement

After formal and informal exchanges of information, the parties began negotiating settlement in August of 2018.  After months of arms-length negotiations, the parties reached agreement on January 17, 2019.   The parties then negotiated the terms of the written settlement agreement.

Prior to resolving his claims, Plaintiff conducted a thorough investigation.  This investigation included pre-litigation research into the collection practices of Defendants; review of deposition testimony from a previous case; extensive informal discussions with Defendants' counsel after the filing of this case; review of Defendants' Answers; review of Defendants' initial disclosures; review of Defendants' written discovery responses; and review of additional documents provided by Defendants.  Among other things, through their investigation, Plaintiff: (1) determined that there were 3,925 putative class members who received letters identical to the letter sent to Mr. Spencer; and (2) reviewed financial information about Defendants as relevant to their ability to pay any judgment and to the calculation of statutory damages.

In reaching settlement, Plaintiff weighed the risks and benefits of continued litigation, including the inherent uncertainty of proceeding, defenses presented by Defendants, the likelihood of substantial expense and delay if settlement could not be reached, and the financial limitations on Defendants' ability to pay damages.  Regardless of Plaintiff's confidence in his claims, litigation is not certain, and Defendants stated a number of factual and legal defenses. These defenses included allegations that Defendants were not "debt collectors" within the meaning of the FDCPA; that Defendants' conduct did not constitute a violation of the FDCPA;

that Defendants' net worth would preclude a substantial award under the FDCPA; and that differing circumstances could pose a challenge for class certification.  Given the nature of the case, it likely would have required depositions and ongoing written discovery throughout the class certification and merits stages, up through trial of the matter.  Counsel may have been required to retain consultants and expert witnesses to offer opinions regarding liability and damages, or to rebut the opinions of Defendants' experts.  The costs of litigation would have been considerable relative to likely recovery.  Even in the event of success, costly and time-consuming appeals were possible.  Defendants' financial records demonstrated that payment was doubtful in the event of a large judgment following years of litigation.

In light of these considerations, and particularly because the parties were able to reach a settlement agreement that was favorable to class members, Plaintiff believes that the proposed settlement agreement is in the best interests of the class.

## IV.    Preliminary Approval of the Settlement Agreement

On February 7, 2019, Plaintiff moved for preliminary approval of the settlement agreement.  [Doc. 52]  The Court granted the motion.  [Doc. 53]  In its Order, the Court certified a class consisting of "[a]ll persons who, starting one year prior to the filing of this action, were sent form debt collection letters by Defendants that were identical to the Letter to Mr. Spencer attached as Exhibit 1 to the Complaint [Doc. 1], and who, as of the filing of this action, have not been sued by Defendants."  *Id*.  The Court appointed Plaintiff as class representative and Plaintiff's counsel as class counsel.  *Id*.  The Court found the settlement agreement worthy of preliminary approval, and directed that notice be sent to class members.  *Id*. The Court scheduled a final approval hearing for May 20, 2019.

## V.    Class Members Were Properly Notified

Using claims administrator American Legal Claims Services, Plaintiff sent Court-approved notice to class members as ordered.  *See* Exhibit 1 (Declaration of American Legal Claims Services).  The vast majority of class members were located, yielding a notification rate of approximately 96%.  *Id*.  Of the nearly 4,000 class members, only two excluded themselves from the settlement.  [Doc. 56]  No class member objected.

## VI.    The Parties Complied With the Class Action Fairness Act

On February 16, 2019, Defendants submitted notice of the Settlement Agreement to the appropriate federal and state Attorneys General in compliance with the Class Action Fairness Act, 28 U.S.C. § 1715 ("CAFA").  [Doc. 54]  No response has been received, and because 90 days will have elapsed since the mailing of the notice, pursuant to the CAFA, the Court may enter final judgment following the hearing on May 20, 2019.

## VII.    Summary of the Settlement Terms and Proposed Distribution

The proposed settlement agreement and plan of distribution provides substantial benefits to class members, and is worthy of final approval.

### A.    Cash Payments to Class Members

The settlement agreement calls for the payment of $85,000 by Defendants.  After payment of attorney's fees, tax, costs, costs of administration, and a service award for the named Plaintiff, discussed below, Plaintiff calculates that $57,099, or just over two thirds (67%) of the total settlement fund, will be available for distribution to class members.  Based on information provided about Defendants' net worth, which is the basis of statutory damages in an FDCPA class action, 15 U.S.C. §1692k(a)(1)(B), this represents an approximately complete recovery of potential damages for class members.

Plaintiff proposes a straightforward plan of allocation of the settlement fund.  Each

class member will receive an equal share of the $58,875, estimated as approximately $15 per person.

**B.    No Action Required By Class Members to Participate in Settlement**

The settlement agreement does not require class members to submit claim forms or to take any affirmative steps to receive the benefits of the settlement.  This process ensures maximum benefits to the class members.

**C.    Right to Opt Out or Object**

Plaintiff's notice explained class members' right to opt out of this case entirely, or in the alternative to object to the proposed settlement agreement.  The deadline to opt out or object was May 1, 2019.

**D.    Award of Attorney's Fees and Costs**

Plaintiff requests that the Court grant final approval to an award of attorney's fees and costs (other than costs of administration) from the common fund in the amount of $12,750, or 15% of the common fund.  This amount is inclusive of gross receipts tax.

"When there is a common fund created by a settlement, courts have applied one of two methods of determining reasonable attorney's fee awards: by a percentage of the fund, or by the lodestar method developed in the statutory fee shifting cases." *Rosenbaum v. MacAllister*, 64 F.3d 1439, 1445 (10th Cir. 1995).  The Tenth Circuit has stated a "preference for the percentage of the fund method." *Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994).  This method involves "a sharing of the fees among those benefitted by the litigation," and "aligns the interests of class counsel with the interests of the class." *Ramah Navajo Chapter v. Jewell*, No. 90 CV 957 JAP/KBM, 2016 WL 825710, at *18-19 (D.N.M. Mar. 2, 2016) (internal quotation marks and citation omitted).  To determine the reasonableness of a percentage of the fund request,

"federal courts have relied heavily on the factors articulated by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974)." *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988). The *Johnson* factors are:

> (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) any prearranged fee—this is helpful but not determinative; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Jewell*, 2016 WL 825710, at *18 (quoting *Johnson*, 488 F.2d at 717-19). Here, the *Johnson* factors weigh strongly in favor of the requested award.

### (1) The Time and Labor Involved and (11) the Nature and Length of the Professional Relationship

This case was filed more than a year ago. Since its inception, the case has involved considerable labor, starting with pre-filing investigation, through active litigation, and most recently in a long settlement process. *See* Exhibit 2 (Declaration of Nicholas Mattison). Class counsel was involved with this case since its inception, and demonstrated "devotion to the best interest of class members during the span of [this] professional relationship[]." *Millsap v. McDonnell Douglas Corp.*, No. 94-CV-633-H(M), 2003 WL 21277124, at *11 (N.D. Okla. May 28, 2003). The complete resolution of this contested class action in little more than a year represents expeditious and diligent work on the part of class counsel.

### (2) The Novelty and Difficulty of the Questions

This case involved technical application of the FDCPA and the UPA. The application of these laws to thousands of class members rendered the case all the more difficult.

### (3) The Skill Required and (9) the Experience, Reputation, and Ability of the Attorneys

Because this case presented novel and difficult questions, it required a high degree of skill to litigate. Plaintiff was represented by New Mexico's preeminent consumer law firm. Feferman, Warren & Mattison has practiced exclusively in consumer law in New Mexico for more than twenty years. *See* Exhibit 2 (Declaration of Nicholas Mattison). Several years ago, the firm was appointed class counsel in another consumer class action, *Chester v. Tancorde Finance, Inc.*, 1:14-CV-92 JAP/KK (Doc. 33, January 12, 2015), in which the District of New Mexico stated "Mr. Feferman has been a mainstay in successful consumer class actions in this District, and the Court is confident he will adequately represent the class and vigorously prosecute this case to its conclusion." Even more recently, approving a class action settlement agreement, the Court opined that "Mr. Feferman and Mr. Mattison are highly capable practitioners of consumer law in New Mexico." *Tullie v. T&R Market, Inc*., 1:14-CV-670 KBM/GJF (Doc. 147, August 30, 2016). State courts agree, with New Mexico's Eleventh Judicial District observing earlier this year that "Class Counsel Nicholas Mattison demonstrated his experience and ability in successfully litigating this class action to an exceptional resolution for the class. Mr. Mattison has a reputation as a skilled practitioner of consumer law." *Peina v. Carma Enterprises, Inc*., No. D-1113-CV-2014-00158 (March 1, 2018).

Plaintiff's counsel demonstrated a high degree of skill in preparing, litigating, and favorably settling this case.

### (5) The Customary Fee and (12) Awards in Similar Cases

Courts in the Tenth Circuit have indicated that there is a "25% benchmark" for percentage of the fund attorney's fee awards, with adjustments to be made based on the *Johnson* factors. *Ramah Navajo Chapter v. Norton*, 250 F. Supp. 2d 1303, 1316 (D.N.M. 2002).

However, this "benchmark" is not universally cited, and awards above 25% are quite common. "[F]ees in the range of 30–40% of any amount recovered are common in complex and other cases taken on a contingent fee basis." *Lane v. Page*, 862 F. Supp. 2d 1182, 1256 (D.N.M. 2012) (Browning, J.); *see also*, *Chieftain Royalty Co. v. SM Energy Co.*, No. CIV-11-177-D, 2015 WL 9451069, at *4 (W.D. Okla. Dec. 23, 2015) ("fees in the range of one-third of the common fund are frequently awarded in class action cases as fair and reasonable."); *Anderson v. Merit Energy Co.*, No. CIV. 07-CV-00916 LTB/BNB, 2009 WL 3378526, at *3 (D. Colo. Oct. 20, 2009) ("The customary fee to class counsel in a common fund settlement is approximately one-third of the economic benefit bestowed on the class.").

Plaintiff's attorney's fee request is modest under the standards established in the Tenth Circuit. As noted above, the requested award of $12,750 for attorney's fees represents 15% of the total settlement fund. This percentage is well within the normal range in the Tenth Circuit. Plaintiff estimates that this amount will be the approximate amount of his counsel's lodestar, including costs other than costs of administration, by the time the case is complete. *See* Exhibit 2 (Declaration of Nicholas Mattison).

### (6) Any Prearranged Fee and (4) The Preclusion of Other Employment

Class counsel undertook this action on a contingency basis. *See* Exhibit 2 (Declaration of Nicholas Mattison). Class counsel would receive no compensation for their work if they did not prevail in this action. "Given the risk of non-recovery, this factor weighs heavily in favor of the requested fee." *Vaszlavik v. Storage Corp.*, No. 95-B-2525, 2000 WL 1268824, at *4 (D. Colo. Mar. 9, 2000). "Such a large investment of money and time places incredible burdens upon law practices and should be appropriately considered." *Lane,* 862 F. Supp. 2d at 1256 (D.N.M. 2012) (internal quotation marks, citation, brackets, and ellipsis omitted); *see also, Been v. O.K.*

*Indus., Inc.,* No. CIV–02–285 RAW, 2011 WL 4478766, at *9 (E.D.Okla. Aug. 16, 2011) ("Courts agree that a larger fee is appropriate in contingent matters where payment depends on the attorney's success.").

In addition to taking the risk of non-payment, Plaintiff's counsel were precluded from engaging in other work during the time dedicated to this case. This type of action "necessarily require[s] a great deal of work, and a concomitant inability to take on other cases." *Lucas v. Kmart Corp.*, No. CIV.A. 99-01923, 2006 WL 2729260, at *6 (D. Colo. July 27, 2006).

### (10) The Undesirability of the Case

This case was difficult and risky. No law firm other than Class Counsel showed any willingness to undertake this litigation. *See* Exhibit 2 (Declaration of Nicholas Mattison). *Cf. Lane,* 862 F. Supp. 2d at 1258 (D.N.M. 2012) ("at the class certification stage, no other class member or law firm sought to represent the class."). No class member other than Mr. Spencer was willing make the considerable investment of time and resources to represent the class. "Attorneys must have incentive to take undesirable cases in order to assure access to the courts for all people; awarding fees based on a reasonable percentage of the recovered fund provides such an incentive." *Millsap,* 2003 WL 21277124, at *12.

### (8) The Amount Involved and Results Obtained

The settlement agreement involves the creation of a settlement fund that will give class members a complete recovery on the class claims in this matter. Class counsel respectfully submit that they have achieved an outstanding result for class members.

### E.   Award of Costs of Administration

In addition to attorney's fees and costs as set forth above, Plaintiff also requests that the Court award costs of administration in the amount of $13,151 from the common fund. *See*

Exhibit 3 (class administration estimate). Taxable costs as are awarded to a prevailing party in any litigation pursuant to Fed. R. Civ. P. 54(d)(1) and 28 U.S.C. § 1920.[1] In addition, as authorized by the fee-shifting statutes applicable here, 15 U.S.C. § 1692k(a)(3) and NMSA § 57-12-10(C), costs may be recovered such as a client would ordinarily be billed and that are not part of counsel's overhead. *See, e.g.*, *Payton v. New Century Mortgage Corp.*, 2004 WL 524693 (N.D. Ill. Mar. 11, 2004); *Daenzer v. Wayland Ford Inc.*, 2003 WL 22414966 (W.D. Mich. Sept. 25, 2003). The costs of administering this class action are awardable under these standards.

### F.    Service Award to Mr. Spencer

Plaintiff requests that the Court grant final approval to a service award of $2,000 for the named Plaintiff, Herbert Spencer. "[C]ourts regularly give incentive awards to compensate named plaintiffs for the work they performed—their time and effort invested in the case." *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 861 F.3d 1182, 1195 (10th Cir. 2017). "The practice of granting incentive awards to Class Representatives is common and widespread in class litigation." *Ponca Tribe of Indians of Oklahoma v. Cont'l Carbon Co.*, No. 05-445 (C), 2009 WL 2836508, at *2 (W.D. Okla. July 30, 2009) (approving awards ranging from $1,000 to $15,000 for class representatives). "[I]ncentive awards are an efficient and productive way to encourage members of a class to become class representatives, and to reward the efforts they make on behalf of the class." *Shaw v. Interthinx, Inc.*, No. 13-CV-01229-REB-

---

[1] 28 U.S.C. § 1920 provides that "A judge or clerk of any court of the United States may tax as costs the following:
(1) Fees of the clerk and marshal;
(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title;
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title."

NYW, 2015 WL 1867861, at *8 (D. Colo. Apr. 22, 2015) (internal quotation marks and citation omitted) (awarding $10,000 to each of five named plaintiffs); *see also*, *Jones v. I.Q. Data Int'l, Inc.*, No. 1:14-CV-00130-PJK, 2015 WL 5704016, at *2 (D.N.M. Sept. 23, 2015) (approving an incentive award of $20,000 out of a $1,000,000 settlement fund).

Here, no other person indicated any willingness or interest in serving as class representative.  *See* Exhibit 2 (Declaration of Nicholas H. Mattison).  Without Mr. Spencer's efforts, there would be recovery whatsoever for the class.  Mr. Spencer served as exemplary class representative, regularly checking in with his attorney on case strategy, litigation, and settlement decisions.  *Id*.  With no assurance of any compensation whatsoever for his efforts, Mr. Spencer persevered through hardship to pursue the interests of the class.  *Id*.  Living on the Navajo Nation, being of advanced age and taking care of a severely ill wife, serving in this role was not easy for Mr. Spencer.  *Id.*  Mr. Spencer met with counsel in person, and conferred on the phone more than 15 times.  *Id*.  Mr. Spencer reviewed pleadings and other documents in detail.  *Id.*  Mr. Spencer's labors have produced a substantial settlement that would have been impossible without him.  A service award of $2,000 is reasonable to compensate Mr. Spencer for his contributions to this case.

### G.    *Cy Pres* Award

Plaintiff proposes to distribute any portions of the settlement fund that cannot be practicably and economically distributed to class members to the following *cy pres* recipient: DNA-People's Legal Services.  "The cy pres doctrine allows a court to distribute unclaimed or non-distributable portions of a class action settlement fund to the 'next best' class of beneficiaries."  *Tennille v. W. Union Co.*, 809 F.3d 555, 560 n.2 (10th Cir. 2015) (internal quotation marks and citation omitted).  Plaintiff will attempt to redistribute any unclaimed funds

to class members prior to making the *cy pres* donation, including through multiple rounds of check distributions, if necessary. DNA-People's Legal Services, is a 501(c)(3) nonprofit organization that provides free legal services to people living in poverty in the Four Corners area.

## VIII.   Final Approval of the Settlement Agreement Is Appropriate

For all of the reasons set forth herein, the proposed settlement agreement is fair, reasonable, and adequate, and is worthy of final approval. The settlement meets the factors set forth in Fed. R. Civ. P. 23(e)(2).

First, as set forth above, Mr. Spencer and his counsel have adequately represented the class. Fed. R. Civ. P. 23(e)(2)(A). Both the class representative and his attorneys have been involved in this case from its inception. They have shepherded the case to a favorable conclusion, with significant benefits for the class.

The proposed settlement was negotiated at arm's length. Fed. R. Civ. P. 23(e)(2)(B). This case was litigated for more than a year prior to settlement. Settlement discussions extended over several months as the parties vigorously negotiated. Settlement was entirely non-collusive.

The relief to the class is adequate. Fed. R. Civ. P. 23(e)(2)(C). As noted above, Plaintiff's plan of distribution represents an approximately complete recovery on class members' claims. To the extent that any compromise of potential recovery was made, it was justified in light of the costs, risks, and delay of proceeding through trial and a potential appeal. The proposed award of attorney's fees is modest and reasonable in light of the standards in the Tenth Circuit. There is no other agreement required to be identified pursuant to Fed. R. Civ. P. 23(e)(3).

Finally, the proposed settlement treats all class members equitably, providing them with identical payments. Fed. R. Civ. P. 23(e)(2)(D).

In sum, the agreement provides substantial benefits to class members.  It was the product of serious, informed, non-collusive negotiations.  No class members have voiced any objection to the proposed settlement.

## IX.    Conclusion and Relief Requested

Plaintiff respectfully requests that the Court grant final approval to the parties' settlement agreement.

Respectfully submitted,

*/s/Nicholas H. Mattison*
Nicholas H. Mattison
Feferman, Warren & Mattison, Attorneys for Plaintiff
300 Central Ave., SW, Suite 2000 West
Albuquerque, NM 87102
(505) 243-7773
(505) 243-6663 (fax)
nmattison@nmconsumerwarriors.com

Approved:

*Approved via email*
RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.
Seth L. Sparks
P.O. Box 1888
Albuquerque, New Mexico 87103
Telephone: (505) 765-5900
*Attorneys for Defendants*
ssparks@rodey.com

### CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing pleading electronically through the Court's CM/ECF File System, which caused all parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

*/s/ Nicholas Mattison*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

HERBERT SPENCER,                                )
                                                )
                                                )
                        Plaintiff,              )
                                                )
v.                                              )        No. 1:17-cv-00792-WJ-SCY
                                                )
DAVID R. JORDAN, and                            )
THE LAW OFFICES OF DAVID R. JORDAN, P.C.,       )
                                                )
                Defendants.                     )

## DECLARATION OF AMERICAN LEGAL CLAIM SERVICES, LLC
## DUE DILIGENCE IN SETTLEMENT ADMINISTRATION

I, Keith Salhab, declare as follows:

1. I am a competent adult, over the age of eighteen, and this declaration is based on my personal knowledge.

2. I am an employee of American Legal Claim Services, LLC ("ALCS"). ALCS was appointed by the Court to serve as the Claims Administrator to administer the terms of the Settlement Agreement. I was principally responsible for overseeing the dissemination of notice to the Class; processing requests for exclusion and objection; and distributing the Settlement Funds.

**Noticing**

3. ALCS prepared a final mailing list of 3,919 Class Members. The preparation for mailing by ALCS included running the list against commercially reasonable means available to assist in locating current addresses, standardizing addresses, etc.

4. The Class List was specifically processed using the United States Postal Service ("USPS") National Change of Address database.

5. Pursuant to the Preliminary Approval Order, on February 28, 2019, ALCS mailed the Class Notice, in the form attached to the Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement Agreement as Exhibit 2, via USPS first-class mail postage prepaid, to 3,919 Class Members.

6. ALCS processed all mail returned by the USPS. Any Class Notice returned to the Administrator as non-delivered was re-mailed to the forwarding address affixed thereto. If no forwarding information was provided by the USPS, ALCS utilized commercially reasonable means to obtain a current address and promptly re-mailed Class Notices where updated current addresses were found. If an updated address was not found or if the re-mailed package was returned by the USPS a second time it was not re-mailed a third time and was deemed undeliverable.

EXHIBIT 1

7. Of the Notice Packages initially mailed, 587 were returned by the USPS and processed by ALCS, as of the date of this declaration. Of those, 416 had forwarding information attached or an updated address was found using commercially reasonable means. ALCS re-mailed the Notice Packages to the updated address. 45 Class Notices from the initial mailing were deemed undeliverable. Of the 416 notices re-mailed to an updated address, 126 Notices were returned by the USPS and processed by ALCS as of the date of this declaration.

8. The following is a summary of the noticing associated with this Class, as of the date of this declaration:

   - Number initially mailed: 3,919
   - Number returned: 587
   - Number re-mailed: 416
   - Total number of Class Notices deemed undeliverable (including re-mailed Class Notices): 171[1]
   - Percentage of Class Notices deemed deliverable: 95.64%[1]

### Request to Opt-Out

9. Per ¶ F of the Preliminary Approval Order, the Class Notice informed Class Members that they may opt-out from the proposed class action settlement. It further states that Class Members who wish to exclude themselves must submit a written statement requesting exclusion. The postmark deadline for valid Requests for Exclusion is May 1, 2019. As of the date of this declaration, ALCS has not received any request to opt-out from the proposed settlement and is aware of 2 Requests for Exclusions that were filed with the Court on April 11, 2019.

### Objections

10. Per ¶ G of the Preliminary Approval Order, the Class Notice informed Class Members that if they wish to object to the Agreement they must provide a written statement to the Court and serve it upon Counsel for the Parties before May 1, 2019. As of the date of this declaration, there have been no known Objections filed with the Court or served upon Counsel to the Parties.

I declare under penalty of perjury pursuant to the laws of the State of Florida that the foregoing is true and correct to the best of my knowledge. Executed on May 1, 2019 at Jacksonville, Florida.

_____
Keith Salhab

---

[1] ALCS continues to receive and process mail, for which no forwarding address is available. The number of pieces of this type of mail will likely increase and the presumed delivery rate will be reduced as processing continues.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

HERBERT SPENCER,

        Plaintiff,

                                    1:17-cv-00792-WJ-SCY

v.

DAVID R. JORDAN, and
THE LAW OFFICES OF DAVID R. JORDAN, P.C.,

        Defendants.

**DECLARATION OF NICHOLAS H. MATTISON
IN SUPPORT OF PLAINTIFF HERBERT SPENCER'S UNOPPOSED MOTION FOR
FINAL APPROVAL OF SETTLEMENT AGREEMENT**

        Nicholas H. Mattison declares under penalty of perjury, as provided for by the laws of the

United States, 28 U.S.C. §1746, that the following statements are true:

1. I am a partner in the law firm of Feferman, Warren & Mattison, which represents Plaintiff in this matter. I am executing this Declaration in support of Plaintiff Herbert Spencer's Unopposed Motion for Final Approval of Settlement Agreement.

2. Our firm's practice is devoted to representing consumers. The firm maintains an active caseload of approximately 70 consumer law matters in both state and federal court. We have represented clients in numerous cases under the Federal Fair Debt Collection Practices Act, the New Mexico Unfair Practices Act and other consumer protection statutes.

3. Richard Feferman, the founder and senior partner of the firm, has been practicing law and handling consumer cases for more than forty years. He graduated from the University of Michigan Law School in 1971 and received his Bachelor of Arts degree from the University of Michigan in 1968.

EXHIBIT 2

4. Mr. Feferman has been admitted to practice in New Mexico since 1978. He is admitted to practice before the Federal District Court in New Mexico, and before the Tenth Circuit Court of Appeals.

5. Mr. Feferman is the co-author of *Consumer Law in New Mexico*, published in 1984 by the New Mexico State Bar Association.

6. I am a 2008 graduate of Harvard Law School. Upon graduation, I clerked with the Honorable Edward L. Chavez on the New Mexico Supreme Court. I spent the next four years working for DNA-Legal Services in Window Rock, Arizona, where my practice involved consumer litigation and I attended specialized training in consumer law. Since I joined Feferman, Warren & Mattison in October, 2013, I have practiced exclusively in the area of consumer litigation.

7. I am admitted to practice in the following jurisdictions: New Mexico (2008); Navajo Nation (2009) (inactive). I am admitted to practice before the Federal District Court in New Mexico and before the Tenth Circuit Court of Appeals.

8. Class action cases we have brought, nearly all of which have settled or litigated successfully, with substantial recovery to the classes, include:

   a. *Berg v. Melloy Bros., Inc. et al.,* CIV 95 0588 MV/LFG (D.N.M.)

   b. *Douglas v. Rosen et al.*, 95-CV-1539 BB/LCS (D.N.M.)

   c. *Begay and Domingo v. First Security Bank New Mexico*, No. CIV 96-348 MV/RLP (D.N.M.)

   d. *Clark v. Gallup Auto Sales, et al.*, 96-CV-141 LCS/LFG (D.N.M.)

   e. *Martin v. Franklin Capital Corporation, et al.*, No. CV 96-8693 (New Mexico, Second Judicial District)

f.  *Chavez v. Decker*, 97-CV-1202 JP/WWD (D.N.M.)

g.  *Yazzie v. Ray Vicker's Special Cars, Inc.*, No. 97-0776 MV/WWD, 12 F. Supp. 2d 1230 (D.N.M.)

h.  *Shorty v. Capital One Bank*, 99-1018 JC/LFG, 90 F. Supp.2d 1330 (D.N.M.)

i.  *Bitsue v. Big Bear Trading Company*, 00-CV-1025 LH/RLP (D.N.M.)

j.  *Martinez v. Check Plus, Inc.*, 01-CV-1320 RLP/KBM (D.N.M.)

k.  *Pithan v. Fodge,* CIV 01 1219 RLP/RHS (D.N.M.)

l.  *Rivera v. Hutcheson*, *et al.*, 01-CV-372 M/DJS (D.N.M.)

m. *Gonzales v. Hernandez Tax Inc.*, 02-CV-46 WJ/LCS (D.N.M.)

n.  *Graham v. Vengroff, Williams & Associates, Inc.,* 02-CV-369 MV/RLP (D.N.M.)

o.  *Reyes v. AAA Title Loan, Inc.*, 02-CV-247 MCA/RLP (D.N.M.)

p.  *McGuire-Pike v. Bennett & DeLoney P.C., et al.*, No. 03-CV-344 (D.N.M.)

q.  *McGuire-Pike v. Americheck, Inc.,* No. 04-CV-705 JB/ACT (D.N.M.)

r.  *Ward v. Roswell Auto Bargain, Inc.*, No. CV-2004-178 (New Mexico, Fifth Judicial District)

s.  *Ward v. Golden West Trading Co., Inc*., No. CV-2004-128 (New Mexico, Fifth Judicial District)

t.  *Begay v. Tanner Enterprises, Inc*., No. CV-2006-1368-1 (New Mexico, Eleventh Judicial District)

u.  *Anchondo v. Anderson, Crenshaw & Associates*, LLC, No. 08-CV-202 RB/WPL (D.N.M.)

v.  *Dandy v. Wilmington Finance, Inc.*, No.  08-CV-1027 JCH/DJS (D.N.M.)

w. *Johnson v. Blayne's Auto Superstore, LLC*, No. CV-08-3526 (New Mexico, Second Judicial District)

x. *Peters v. Jet Equities, LLC*, No. CV-08-486 (New Mexico, Fifth Judicial District)

y. *Cawley v. Sisbarro Buick-GMC, Inc. et al.*, No. D-202-CV-2014-02437 (New Mexico, Second Judicial District)

z. *Gorman v. S/W Tax Loans, Inc.,* No. 1:14-CV-00089-GBW/KK (D.N.M.)

aa. *Anderson v. Big E,* No. D-1113-CV-2014-00128 (New Mexico, Eleventh Judicial District)

bb. *Peina v. Carma Enterprises, Inc*., No. D-1113-CV-2014-00158 (New Mexico, Eleventh Judicial District)

cc. *Yazzie v. Gurley Motors and Red Rock*, No. 1:14-CV-00555-JAP-SCY (D.N.M.)

dd. *Tullie v. T & R Market, Inc.,* No. 1:14-cv-00670-MV-KBM (D.N.M.)

ee. *Daye v. Community Financial Service Centers, LLC,* No. 1:14-cv-00759-JB-SCY (D.N.M.)

ff. *Vigil v. Prestige Financial Services, Inc*., No. D-202-CV-2015-00233 (New Mexico, Second Judicial District)

gg. *Central Loan Co*. *v. Shearill*, No. D-307-CV-2015-00854 (New Mexico, Third Judicial District)

hh. *Daniels v. Jack D. Cook, Inc.*, No. 1:15-CV-00632-MCA-WPL (D.N.M.)

ii. *DeJolie v*. *T&R Market, Inc. et al.*, No. 1:17-cv-00733 (D.N.M.)

9. The following class action cases are currently pending:

a. *Tullie v. Quick Cash Inc.*, No. 1:14-cv-00491-SMV-SCY (D.N.M.)

    b. *Barth v. Courtesy Loans of New Mexico, Inc.*, No. D-202-CV-2015-08162 (New Mexico, Second Judicial District)

    c. *Daye v. Gladino, Inc.*, No. D-1113-CV-2015-00424 (New Mexico, Eleventh Judicial District)

    d. *Daye v. Bo-Tan, LLC et al.,* No. D-1113-CV-2015-00428 (New Mexico, Eleventh Judicial District)

    e. *Castillo v. Payment 1 Financial, Inc.*, No. D-202-CV-2017-08575 (New Mexico, Second Judicial District)

    f. *Lucero-Jones v. Osuna Trading & Loan Co*., No. D-202-2018-05577 (New Mexico, Second Judicial District)

10. My firm accepted this case entirely on a contingent fee basis. We have received no payment for more than a year. We took on the complete risk of nonpayment.

11. I estimate that my firm's lodestar will be in the range of $12,750, including tax and costs other than costs of administration, by the conclusion of this case. This case involved significant labor, starting with pre-filing investigation, through active litigation, and most recently in a long settlement process. No other law firm showed any willingness to undertake this litigation.

12. Mr. Spencer served as an exemplary class representative.

13. Mr. Spencer regularly met with and communicated with his lawyers throughout this case, including more than 15 phone calls. He reviewed key pleadings and other documents. He played an active role formulating and evaluating settlement offers.

14. Mr. Spencer is an elderly man who lives on the Navajo Nation. During this case, his wife suffered from serious medical conditions.

15. No other person indicated any willingness or interest in serving as class representative.

16. Mr. Spencer was essential to the excellent result obtained in this case.


Respectfully submitted,


*/s/Nicholas H. Mattison*
Nicholas H. Mattison
Feferman, Warren & Mattison, attorneys for Plaintiff
300 Central Ave., SW, Suite 2000 West
Albuquerque, NM 87102
(505) 243-7773

 **American Legal** Claim Services LLC

**Administration Services Estimate**
**Noticing and Check Distribution for New Nick Mattison 3950 Person Case**
**August 20, 2018**
**Benny W. Davis, Jr.**
*benny.davis@americanlegalclaims.com*

| Key Assumptions Used in Estimate | | | | |
|---|---|---|---|---|
| Size of Entire class: | 3,925 | Length of case in months: | | 10 |
| % FOE | 5% | Call Center: | | N/A |
| %UAA | 10% | Call Center Estimated Response Rate | | N/A |
| %UAA Located and remailed | 50% | Distributions requiring remail | | 5% |

| | Rate of Response | Quantity | Rate Per Unit | Estimated Cost | Total |
|---|---|---|---|---|---|
| **_Data Processing_** | | | | | |
| Initial Data Intake and Setup | | | | | |
| Forms design | | 2 | $100.00 | $200 | |
| Import and Process Data | | 2 | $100.00 | $200 | |
| NCOA | | 1 | $100.00 | $100 | |
| SUBTOTAL - Data Processing | | | | | $300 |
| | | | | | |
| Project Administration | | | | | |
| Staff Support Hours | | 3 | $60.00 | $180 | |
| Sr. Consultant Hours | | 6 | $125.00 | $750 | |
| Affidavit Preparation Hours | | 1 | $125.00 | $125 | |
| SUBTOTAL ADMISTRATION | | | | | $1,055 |
| | | | | | |
| **_Noticing_** | | | | | |
| Print/Mail 8 1/2 x 14 double sided self mailer | | 3,925 | $0.26 | $1,021 | |
| Administration Print and Mail Production | | 2 | $125.00 | $250 | |
| Processing UAA Notices | | 393 | $0.25 | $98 | |
| Processing FOE Notices | | 196 | $0.80 | $157 | |
| Locator on UAA | | 393 | $0.40 | $157 | |
| Remails UAA/FOE Notices | | 393 | $0.65 | $255 | |
| Staff Hours Processing Forwarding Expired Mail | | 2 | $60.00 | $120 | |
| SUBTOTAL - DISBURSEMENT OF PAYMENTS | | | | | $2,058 |
| | | | | | |
| **_Disbursement of Settlement Fund_** | | | | | |
| Bank Fees at East West or PNC Bank | | 6 | $200.00 | $1,200 | |
| Establish QSF, obtain Tax ID | | 1 | $100.00 | $100 | |
| Distribution Calculations and Preparation | | 4 | $125.00 | $500 | |
| Print/Mail Payments to Class Members | | 3,925 | $0.50 | $1,963 | |
| Distribution Management | | 4 | $125.00 | $500 | |
| Payments Requiring Reissue | 5% | 196 | $1.00 | $196 | |
| Management Hours for Reporting/Follow-up | | 4 | $125.00 | $500 | |
| Reconcilation of Bank Account | | 8 | $60.00 | $480 | |
| Settlement Fund Tax Returns Annual | | 1 | $375.00 | $375 | |
| SUBTOTAL - DISBURSEMENT OF PAYMENTS | | | | | $5,814 |
| | | | | | |
| **_TOTAL ESTIMATED PROJECT COSTS_** | | | | | $9,227 |
| | | | | | |
| Plus Total Estimated Postage (postage payable in advance) | | | | $3,924 | |
| | | | | | |
| **_TOTAL ESTIMATED PROJECT COSTS INCLUDING POSTAGE_** | | | | | $13,151 |

**_Other Services and Out of Pocket Expenses_**

| | | |
|---|---|---|
| | | Standard Hourly Rates |
| All additional services and reporting as needed | | |
| | | |
| Other Charges and Out of Pocket Costs | | Actual |

This Administration Services Estimate and all attached documents including scope of services ("The Proposal") is valid for 60 days from 8/20/18. After this period ALCS reserves the right to amend or withdraw The Proposal.

All fees and services that are set forth in The Proposal are estimates and subject to the terms, assumptions, specifications and conditions that are set forth in The Proposal and the Terms and Conditions attached. By signing below, The Client acknowledges and agrees that they have read and understand the Terms and conditions, which are incorporated by reference as if fully set herein and agree to be bound by them.

American Legal Claim Services LLC                    The Client

By: _____    _____    By: _____    8/20/18

Title: _____    Date: _____    Title: _____    Date: _____

EXHIBIT 3

**TERMS AND CONDITIONS**

All services to be provided to _____ ("Client") by American Legal Claim Services, LLC (together with its affiliates, "ALCS") are subject to the following Terms and Conditions:

**1. SERVICES**. ALCS agrees to provide Client with the services set forth in the Proposal attached hereto (the "Services"). Client acknowledges and agrees that ALCS will often take direction from Client's representatives, employees, agents and/or professionals (collectively, the "Client Parties") with respect to the Services. The parties agree that ALCS may rely upon, and Client agrees to be bound by, any requests, advice or information provided by the Client Parties to the same extent as if such requests, advice or information were provided by Client. Client agrees and understands that ALCS shall not provide Client or any other party with any legal advice.

**2. PRICES, CHARGES AND PAYMENT**. ALCS agrees to charge and Client agrees to pay, subject to the terms herein, ALCS for its fees and expenses as set forth in the Proposal. Client acknowledges that any estimate in the Proposal is based on information provided by Client to ALCS and actual fees and expenses may vary depending on the circumstances and length of the case. Notwithstanding the foregoing, where total expenses are expected to exceed $1,000 in any single month, ALCS may require advance payment from Client due and payable upon demand and prior to the performance of services. ALCS's prices are inclusive of commission and other charges and are generally adjusted periodically to reflect changes in the business and economic environment. ALCS reserves the right to reasonably increase its prices, charges and rates annually. If any price increases exceed 10%, ALCS will give thirty (30) days written notice to Client. Client agrees to pay the reasonable out of pocket expenses incurred by ALCS in connection with Services, including, but not limited to, transportation, lodging, meals. ALCS agrees to submit its invoices to Client and Client agrees that the amount invoiced is due and payable upon receipt.

**3. FURTHER ASSURANCES**. Client agrees that it will use its best efforts to include provisions reasonably acceptable to ALCS in any relevant court order, settlement agreement or similar document that provide for the payment of ALCS's fees and expenses hereunder.

**4. RIGHTS OF OWNERSHIP**. The parties understand that the software programs and other materials furnished by ALCS to Client and/or developed during the course of the performance of Services are the sole property of ALCS. The term "program" shall include, without limitation, data processing programs, specifications, applications, routines, and documentation. Client agrees not to copy or permit others to copy the source code from the support software or any other programs or materials furnished to Client. Fees and expenses paid by Client do not vest in Client any rights in such property, it being understood that such property is only being made available for Client's use during and in connection with the Services provided by ALCS.

**5. CONFIDENTIALITY**. Each of ALCS and Client, on behalf of themselves and their respective employees, agents, professionals and representatives, agrees to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the Services; provided, however, that if either party reasonably believes that it is required to produce any such information by order of any governmental agency or other regulatory body it may, upon not less than five (5) business days' written notice to the other party, release the required information. These provisions shall survive termination of Services.

**6. BANK ACCOUNTS**. At Client's request, ALCS shall be authorized to establish accounts with financial institutions as agent for Client or as otherwise agreed by the parties. All Client accounts established by ALCS shall be deposit accounts of commercial banks with capital exceeding $1 billion. In some cases, ALCS may derive financial benefits from financial institutions resulting from settlement funds and other moneys on deposit or invested with them. These benefits include, for example, discounts provided on certain banking services and service fees.

**7. TERMINATION**. The Services may be terminated by either party (i) upon thirty (30) days' written notice to the other party or (ii) immediately upon written notice for Cause (defined herein). As used herein, the term "Cause" means (i) gross negligence or willful misconduct of ALCS that causes serious and material harm to Client, (ii) the failure of Client to pay ALCS invoices for more than sixty (60) days from the date of invoice, or (iii) the accrual of invoices or unpaid services where ALCS reasonably believes it will not be paid. Termination of Services shall not relieve Client of its obligations to pay all fees and expenses incurred prior to such termination. In the event that the Services are terminated, regardless of the reason for such termination, ALCS shall reasonably coordinate with Client to maintain an orderly transfer of data, programs, storage media or other materials furnished by Client to ALCS or received by ALCS in connection with the Services. Client agrees to pay for such services in accordance with ALCS's then existing prices for such services.

**8. LIMITATIONS OF LIABILITY AND INDEMNIFICATION**. Client shall indemnify and hold ALCS, its affiliates, members, directors, officers, employees, consultants, subcontractors and agents (collectively, the "Indemnified Parties") harmless, to the fullest extent permitted by applicable law, from and against any and all losses, claims, damages, judgments, liabilities and expenses (including reasonable counsel fees and expenses) (collectively, "Losses") resulting from, arising out of or related to ALCS's performance of Services, including in its reliance upon a settlement agreement or Client direction with respect to tax characterization or allocation of a distribution. Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third-parties against any Indemnified Party. Client shall notify ALCS in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that Client becomes aware of with respect to the Services provided by ALCS.

Except as provided herein, ALCS's liability to Client or any person making a claim through or under Client for any Losses of any kind, even if ALCS has been advised of the possibility of such Losses, whether direct or indirect and unless due to gross negligence or willful misconduct of ALCS, shall be limited to the total amount billed or billable to Client for the portion of the particular work which gave rise to the alleged Loss. In no event shall ALCS's liability to Client for any Losses, whether direct or indirect, arising out of the Services exceed the total amount billed to Client and actually paid to ALCS for the Services. In no event shall ALCS be liable for any indirect, special or consequential damages such as loss of anticipated profits or other economic loss in connection with or arising out of the Services. Client agrees that except as expressly set forth herein, ALCS makes no representations or warranties, express or implied, including, but not limited to, any implied or express warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity. The provisions of this Section 8 shall survive termination of Services.

**9. FORCE MAJEURE**. Whenever performance hereunder is materially prevented or impacted by reason of any act of God, strike, lock-out or other industrial or transportation disturbance, fire, lack of materials, law, regulation or ordinance, war or war condition, or by reason of any other matter beyond the performing party's reasonable control, then such performance shall be excused and shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

**10. INDEPENDENT CONTRACTORS**. ALCS is and shall be an independent contractor of Client and no agency, partnership, joint venture or employment relationship shall arise, directly or indirectly, as a result of the Services or these Terms and Conditions.

**11. NOTICES**. All notices and requests hereunder shall be given or made upon the respective parties in writing and shall be deemed as given as of the third day following the day it is deposited in the U.S. Mail, postage pre-paid or on the day it is given if sent by facsimile or on the day after the day it is sent if sent by overnight courier to the appropriate address set forth in the Proposal or to such other address as the party to receive the notice or request so designates by written notice to the other.

**12. APPLICABLE LAW**. These Terms and Conditions will be governed by and construed in accordance with the laws of the State of Florida, without giving effect to any choice of law principles.

**13. ENTIRE AGREEMENT; MODIFICATIONS; SEVERABILITY; BINDING EFFECT**. These Terms and Conditions, together with the Proposal delivered pursuant hereto, constitutes the entire agreement and understanding of the parties in respect of the subject matter hereof and supersede all prior understandings, agreements or representations by or among the parties, written or oral, to the extent they relate in any way to the subject matter hereof. If any provision herein shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby. These Terms and Conditions may be modified only by a written instrument duly executed by the parties. All of the terms, agreements, covenants, representations, warranties and conditions of these Terms and Conditions are binding upon, and inure to the benefit of and are enforceable by, the parties and their respective successors and permitted assigns.

American Legal Claim Services LLC _____    Date _____

_Nill_

Client _____    Date 8/20/18